## SILAS BERRY *v.* THE STATE.

1. CHARGE OF THE COURT. — Note in this case a state of proof which warranted the court below to instruct the jury on the hypothesis that the accused was a principal offender, notwithstanding that his complicity in the commission of the offense could only be deduced inferentially from the facts in evidence.

2. PRINCIPAL OFFENDERS. — Whether an implicated party is a principal offender is not always determinable by the question whether he was corporally present, and aiding, or encouraging, the commission of the offense. When there are several acts constituting one crime, though each act be separately performed by a different individual, in the absence of the rest, but in furtherance of a common design, all are jointly principals as to the whole.

3. EVIDENCE — PRACTICE. — Confessions made in custody are not exceptions to the rule that objections to the admissibility of evidence must be interposed when it is offered, and are not primarily available by motion for a new trial, or on appeal.

4. THEFT — CONFESSIONS IN ARREST. — In a trial for horse-theft, the proof showed that a sheriff's posse found and arrested the accused in a county distant from the county where the horse was stolen, and that, when arrested, he made disclosures which led to the discovery of the horse. *Held*, on his trial as a principal offender, that such disclosures, though made in arrest, were competent evidence for the State, although his complicity in the original taking was not directly in proof.

5. SEVERANCE. — One jointly indicted with others has not the right to insist that a severance shall not be granted to the others.

APPEAL from the District Court of Williamson. Tried below before the Hon. E. B. TURNER.

The indictment impleaded Jeff Ake, William Ake, William Bybee, and the appellant, Silas Berry, and charged them jointly with the theft of a certain gelding belonging to W. C. McDougle, on May 30, 1876.

McDougle proved the fact and time of the theft as alleged in the indictment, and that the animal was returned to him by L. F. Hurt, about a month after it was stolen. He did not know who took it, and had never seen the appellant in possession of it.

S. E. Holland testified that in June, 1876, he was one of a sheriff's posse in pursuit of horse-thieves, and in the forks of the Llano River, near Bob Hinds', they learned that the Akes were on top of the mountain. The next morning, seeing two men on the mountain, they surrounded it. In their search of the mountain, witness got a glimpse of a gun, and, following that hint, discovered two men hid under the brush and among the rocks. Witness threw his gun down on them, and they cried, " Don't shoot," and then came out. In each other's presence they told witness their names were Silas Berry and William Bybee, and that they had been riding about forty yards behind the wagon of Bill and Jeff Ake, about a mile from where they then were, when the wagon had been fired into, on the Fredricksburg road ; that they left the road, unsaddled their horses, and hid the saddles, and hobbled the horses in a mesquite flat, and then went to the mountains, and were watching the men below, with the intention of coming down in case they recognized any of them. Witness asked them where their horses were, and they replied, "Our horses are down the mountain, in the mesquite flat ;" and on witness pressing them further about their horses, they said they were the Akes horses. Being taken down to the camp of the posse, at the foot of the moun-

tain, they there repeated the same statement, and some of the posse went and brought the horses in, when Berry and Bybee recognized them as the horses they had been riding the night before. One of these horses, as appears by other witnesses, was McDougle's stolen gelding.

John Clymer, testifying for the State, said he was with the posse, and was near the Akes wagon when some sixteen shots were fired into it. The next morning witness was at camp when Berry and Bybee were brought in, and his account of their statements accorded with that given by the previous witness. This witness went in search of the horses in the mesquite flat, and, at first, could not find the saddles, and Berry or Bybee, or both of them, went back with witness to find them. Bybee's was in an open space, and Berry's hidden in the brush. Berry said he hid his saddle because it was a fine one. He also stated that he moved Mrs. Ake from Williamson County to Kimble County, and that Bybee came along with them.

L. F. Hurt testified that he was one of the posse, and was present when Berry and Bybee were brought into camp. His account of their statements concurs with that already given, but he added that before the horses were brought in he inquired of Berry and Bybee about McDougle's gelding, describing it to them, and they replied, "That is one of the horses we were riding, and left down in the mesquite flat." Witness brought the gelding back to McDougle.

On this testimony the prosecution rested.

For the defense, John Parsons swore that about the last of May, 1876, he and Joe Hunt traveled for a day and a-half along with two men who called themselves Bob Thompson and George Campbell. Witness and Hunt were moving some cows from San Saba to Kimble County, and the others said they were going to Bob Hinds', in Kimble County. Thompson and Campbell were driving six or

seven horses, and among them the animal which witness had since learned is McDougle's gelding. Witness had seen the animal in McDougle's possession the day of this trial, and knows it to be one of the horses he saw in the possession of Thompson and Campbell. Witness was along with the State's witness, Clymer, when this gelding and another horse were brought into the camp of the posse, and witness then recognized it as one of those he had seen with Thompson and Campbell. Witness never saw Berry, the accused, until the day he was arrested by the posse.

Joe Hunt, for the defense, testified to the same effect as Parsons.

Jack Hoover, for the defense, stated that about June 5 or 6, 1876, he met Thompson and Campbell near Bob Hinds', and saw in their possession the gelding described by the preceding witnesses. Witness was frequently about their camp, and saw the animal there. Jeff Ake, his wife, mother, and niece came to the camp four or five days before the sheriff's posse attacked them. Jeff Ake went by the name of Ben Thompson, his wife by the name of Mrs. Thompson, and his mother by the name of the widow Thompson, and Jeff claimed Bob Thompson as his brother. Witness did not see either Berry or Bybee in that camp.

Bob Harris, for the defense, stated that he was with the sheriff's posse, and saw Berry and Bybee after they were arrested. Witness heard Berry say he had moved Mrs. Ake up to Kimble County, and saw Mrs. Ake's " plunder " thrown out of the wagon, the morning the posse started back to Williamson County with Berry and Bybee in custody. Witness heard Mrs. Ake say that Silas Ake would make Berry a deed to some land for moving them. The wagon and team were brought back to Williamson County and turned over to Berry's wife.

The jury found the appellant guilty, and awarded him ten

years in the penitentiary. The court below refused a new trial, and this appeal ensued.

*Hughes & Key*, for the appellant. The court below erred in the instructions given the jury as to who are principals, because there is no evidence tending to prove that appellant was present in Williamson County when Bob Thompson and George Campbell, in whose possession the gelding was first seen after the theft was committed, took the animal from William C. McDougle; and the record is equally barren of proof that appellant " aided by acts, or encouraged by words or gestures," those who took said gelding. Though we do not admit such to be the evidence, yet if appellant was in possession of the stolen animal on June 16, 1876, in Kimble County, which is 150 miles from Williamson County, where the theft was committed, and the proof showing that the animal, up to that date, was not in his possession, but in the possession of others, who carried it up to that county, such testimony does not tend to prove that appellant was present in Williamson County when and where McDougle's gelding was taken.

This charge being, as we think, without evidence to support it, is obnoxious to the plain requirements of the Code.

In considering our third assignment of errors and proposition under it, the attention of the court is invited to the entire statement of facts.

Is the evidence sufficient to warrant the verdict of the jury? We think not. McDougle's gelding was stolen from him in Williamson County, on May 30, 1876; the same gelding was seen in possession of Bob Thompson and George Campbell by the witnesses Hunt and Parsons, who traveled a day and a-half with Thompson and Campbell, to Kimble County. These two witnesses are positive that it is the same animal, and are equally certain that appellant was not at that time in possession of the gelding.

The testimony further shows that the animal remained in possession of those who carried it to Kimble County up to June 16, 1876, and the witness Hoover says appellant was not at the Thompson camp until June 17th, and that if he had been there he could have seen him, as he was there nearly every day. It will hardly be denied that appellant had moved Mrs. Ake from Williamson to Kimble County. Mrs. Ake was not seen there until the morning of June 17th, and her "plunder" was taken out of appellant's wagon, and she told him a Mr. Joe Ake would make him a deed to some land for moving her. Appellant's wagon and team were brought to Georgetown and delivered to his wife.

At any rate, appellant and Bybee were behind the Ake wagon on the night of June 16th, when a violent attack was made on it and about sixteen gun-shots fired into it; whether by Indians, robbers, or sheriff's posse, the record does not disclose, nor did appellant or Bybee know. That attack on the wagon was the reason given by them for leaving the road and their horses, and going up on the mountain and hiding themselves. Was their conduct, under the circumstances, unusual, or inconsistent with innocence? They were in a frontier county, where Indian raids were not infrequent and savage murders too numerous, and were startled by the furious attack on the wagon, forty yards in advance of them; they fled — who would not have done so? — for their personal safety. They were terrified; their flight was not prompted by a consciousness of having stolen McDougle's gelding, but it was in obedience to nature's first law that they sought security in the undergrowth on the mountain hard by. It was not to avoid being arrested that they fled and hid, but rather to escape being murdered.

It is true, they remained hid after daylight, watching the men down below them, intending to come down if they recognized any one. They knew not who that band of men was composed of, whether its object was to sustain or violate

the law; and if they supposed, as they probably did, that those were the men who made the attack on the Ake wagon the night before, appellant's willingness to be passed by unnoticed is not marvelous.

The fact that appellant hid his saddle militates neither for nor against him. It was a fine saddle, and, like many other men would have done, to preserve it from being chewed by cattle or taken by some passer-by, Berry hid it; but it was not stolen property, and his telling all about it shows he had no guilty purpose in concealing it.

We come now to consider appellant's declarations, so readily made, which, in the court below, were relied on to show that he had, a few hours before his arrest, been in possession of the McDougle gelding. The witness Holland says that Berry and Bybee, when he arrested them, said, in response to his question as to the whereabouts of their horses, "Our horses are down the mountain, in the mesquite flat," but when he made further inquiries about the horses they said they were the Akes' horses. To the other witnesses they spoke of them as "our horses, or the horses we were riding." There were two horses spoken of by them as "our horses." Appellant had been riding one of these horses and Bybee the other, but neither of them had been riding both animals. Therefore there must have been two separate possessions—one of the McDougle gelding and the other of the other horse spoken of and recognized by the prisoners, and which was, so far as the record shows, good property, and did, in fact, belong to the Akes. Then, which of the animals did appellant ride, and which did Bybee? If Bybee rode the McDougle gelding and Berry the other horse, then he had not been in possession of the stolen property, but was only riding with one who was in possession of it. If two persons happen to be riding together on horseback, though two hours before they may have been strangers to each other, if either should speak to another person about

the animals ridden by his fellow-traveler and himself, he would naturally say " our horses " — simply meaning the two animals respectively and separately ridden and possessed by himself and the other traveler.    So, when appellant said " our horses," he did not mean that Bybee and he were joint owners or possessors of each horse, but used that term only to indicate that Bybee had been riding one and appellant the other.    Therefore, we maintain that the proof does not show that appellant had been in possession of the stolen property.

But if appellant was, on the day previous to his arrest, in possession of McDougle's gelding, and if his possession was recent, which we controvert, yet such possession alone would not be sufficient to convict him.

In the case of *Hannah* v. *The State*, 1 Texas Ct. App. 579, this court says the law may be briefly stated, thus : " When one is found in possession of property recently stolen, whilst this fact would be a circumstance to be considered by the jury in determining the guilt or innocence of the accused, still this circumstance would not of itself justify a conviction ; but, in order to convict of theft, the law requires further evidence of guilt than the naked fact of being found in possession of the property."    This exposition of the law conforms to the rule laid down by standard law-writers, " that circumstantial evidence, to justify a conviction, must exclude every other hypothesis than that of guilt."    In this case, if the property was even in appellant's possession, it was not until sixteen days after the theft, and the proof is that up to that time it had been in possession of others, who carried it 150 miles from where it was stolen, and kept it at a camp where Jeff Ake and his family were, and that on June 16, 1876 — the same day that appellant reached Kimble County, moving Mrs. Ake, which was a legitimate business — he had the McDougle gelding in his possession, and so stated when arrested ; each time, and to

each witness, telling the same story, and even telling the witness Hurt, when he described the McDougle horse, that one of the horses they left in the flat was the animal Hurt was hunting, and further explaining his possession so reasonably, consistently, and in such perfect harmony with his innocence, as to leave his possession barren of every characteristic of guilt.

Will such possession of stolen property — 150 miles from where it was stolen, sixteen days after the theft, during the greater portion of which time it was in the possession of others, considered in connection with the fact that appellant voluntarily discloses his possession and gives a reasonable explanation of it, which was not shown to be false — warrant a conviction for theft? We confidently believe it will not, and respectfully ask a reversal of this cause.

*George McCormick*, Assistant Attorney-General, for the State.

WINKLER, J. The appellant and three others were indicted for theft of a gelding. On the trial all the defendants claimed a severance, which being granted, the appellant was tried separately and convicted, and a new trial having been refused him in the court below, he prosecutes this appeal from the judgment.

Several errors are complained of in the motion for a new trial, and in an assignment of errors set out in the transcript, though there is but one bill of exceptions embraced in the record. It is proposed to consider the errors complained of, in so far as they are deemed to have a controlling influence upon the verdict and judgment appealed from. On the trial the judge presiding instructed the jury as follows: " All persons are principals who are guilty of acting together in the commission of an offense. When an offense is actually committed by one or more persons, but others

are present, and, knowing the unlawful intent, aid by acts, or encourage by words or gestures, those actually engaged in the commission of the unlawful act, such persons, so aiding or encouraging, are principal offenders, and may be prosecuted and convicted as such." To this portion of the charge a bill of exceptions was taken, on the ground, as stated in the bill of exceptions, "that it was not warranted by the evidence in the case, as the evidence did not show Berry present when the offense was committed, or that he knew of it when committed, or that he either encouraged by words or gestures those who committed the offense."

It is not contended that, abstractly considered, the charge was not a correct enunciation of law; and, in fact, such position could not well be maintained, as it is in almost the exact language of the Penal Code, articles 214, 215. Pasc. Dig., arts. 1809, 1810. But it is insisted that the charge was erroneous because not applicable to the facts proved on the trial. It is conceded that if the charge did not apply to the proofs adduced it ought not to have been given, because, if on no other account, it would have tended to divert the minds of the jury from the true issues involved. In order, then, to determine whether the instruction was applicable to the facts proved or not, it will be necessary to notice briefly the evidence adduced.

Agreeably to the statement of facts, the theft was committed in Williamson County, on the night of May 30, 1876. On June 17, 1876, the appellant and another party charged in the indictment with the theft were arrested in Kimble County, a distance of 150 miles from where it is alleged the theft was committed. When arrested, they made disclosures which led to the discovery, in the vicinity, of the stolen animal. On the way from Williamson County to Kimble County the animal was seen, with others, in charge of two other persons not named in the indictment, and the appellant, after his arrest, stated that he and his companion had, on the night before, been

riding a short distance behind the wagon of another one of the persons charged in the indictment with the theft, and took alarm and secreted themselves on the mountain where they were arrested, and that they were riding the stolen animal and another. The proofs do not disclose whether the appellant or his companion had been riding the animal in question. Under these circumstances, we are of opinion the charge complained of was proper. Article 214 of the Penal Code (Pasc. Dig., art. 1809) declares that "all persons are principals who are guilty of acting together in the commission of an offense." The following articles afford examples as to what relation to the crime committed would create the relation of principal.

We do not understand that it is necessary, in order to constitute this relation to the crime, that all should be actually present and acting at one and the same time, but that the whole be in pursuance of a plan in which the minds, not the hands, of all concur. "When there are several acts, constituting together one crime, if each act is separately performed by a different individual, in the absence of the rest, all are jointly principals as to the whole." 1 Bishop's Cr. Law, sec. 598 ; *Welsh* v. *The State*, 3 Texas Ct. App. 413.

The charge certainly submitted to the jury the question of the guilt or innocence of the accused, together with the presumption of innocence, and the reasonable doubt, and as to the credibility of the witnesses, in a fair and impartial manner, and in which we find nothing of which the appellant can complain.

In the original and amended motion for a new trial the appellant complains that the court erred in permitting the State to prove the declarations of the defendant while under arrest, and "that the court erred in permitting the State to sever the defendants, Berry, Bybee, and Ake, who were all joined in the indictment and indicted together, and in permitting the county attorney to elect and put Berry on trial first, without the consent of Berry."

Under the provisions of the Code of Criminal Procedure, article 661, the confession of a defendant may be used against him, if it appears that the same was freely made, without compulsion or persuasion. But by the succeeding article, 662, it is further provided that the confession shall not be used if, at the time it was made, " the defendant was in jail or other place of confinement, or while he is in custody of an officer, * * * unless, in connection with such confession, he made statement of facts or of circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property," etc. In the present instance the testimony appears to have been admitted without objection by the accused, and on that account he cannot now be heard to complain. But the proof shows that the confessions of the appellant and his companion did tend to establish his guilt, in that they led to the discovery of the stolen property, and were, therefore, not within the statutory inhibition against the admission of confessions made by one under arrest.

With regard to the severance, the record does not sustain the position taken in the motion; on the contrary, the judgment of the court recites, and is not contradicted, that the severance was granted at the instance of all the defendants. The entry on the face of the record is as follows:

"And now, on this the 15th day of April, A. D. 1878, this cause being regularly reached and called for trial, comes the State of Texas, by her county attorney, and announced ready for trial, and came the defendants, in person and by attorneys, and claim a severance for each defendant in this cause, which is accordingly granted by the court; and said severance being granted by the court, the defendant Silas Berry announced ready for trial," etc. The appellant, having participated in procuring a severance, cannot now be heard to complain. The fact that he was jointly indicted

with others did not prevent the court from granting a separate trial to each defendant, on a proper showing.

It is contended, on behalf of the appellant, that the testimony of guilt is not of a sufficiently conclusive and convincing character. Cases of this nature often involve the right of the jury to infer from facts proved the existence of other facts, and to determine the intent existing at the time from the facts proved. And by our system of criminal procedure it is the peculiar province of the juries to deal with the evidence and the credibility of the witnesses. After verdict, the sufficiency of the evidence becomes a question for the judge to whom a motion for a new trial is addressed.

So, when the jury, under proper instructions, finds sufficient evidence to convict, and when the judge, with his means of judging of the evidence by having the witnesses before him, and having an opportunity to observe their manner of testifying and how they stand the test of cross-examination, deems the testimony sufficient to warrant a conviction, this court would not feel warranted in interposing, unless, upon examination of the record, it should appear that the finding is against the testimony, or without sufficient legal evidence to support it. This is not such a case. On the contrary, there was, in our opinion, a sufficient amount of legal evidence connecting the defendant with the commission of the offense to warrant the jury in the conclusion that the appellant was a principal in the theft, under the law given in charge by the judge.

After carefully considering the whole case as presented by the record, in the light of able and exhaustive oral and written argument, we fail to discover any just ground to question the correctness of the verdict and judgment; and, therefore, the judgment of the District Court of Williamson County is affirmed.

*Affirmed.*